William H. McFarland, Appellee, v. George W. Jackson, Incorporated, and William H. Lotts, Appellants.

### Gen. No. 19,889.    (Not to be reported in full.)

Appeal from the Circuit Court of Cook county; the Hon. BENJAMIN W. POPE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed November 10, 1914. Rehearing denied November 24, 1914.

## Statement of the Case.

Action by William H. McFarland against George W. Jackson, Incorporated, and William H. Lotts, for personal injuries. The plaintiff prior to and at the time of the accident, on or about February 25, 1911, was working for George W. Jackson, Incorporated, under the direction of the other defendant as foreman for the corporation.

The declaration contains three counts. Each count alleged that the defendants were moving a beam of a ton in weight by means of two dollies, or rollers,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

which were adapted to move the beam lengthwise and not sidewise. The first count alleged defendants employed an unsafe method of moving dolly and beam sidewise by causing another servant to pry and move the dolly and said beam with a crowbar, which caused the girder to tip and fall on plaintiff's foot. The second count alleged that the defendant, George W. Jackson, Incorporated, by its foreman, Lotts, gave a dangerous and unsafe order to another servant to move the dolly and the beam sidewise, which the other servant did, and the beam was caused to tip and fall upon plaintiff's foot. The third count alleged the selection and execution by defendants of a dangerous and unsafe method of moving the dolly and beam sidewise and failure to warn the plaintiff of the danger. The other necessary allegations of due care on the part of plaintiff, of knowledge on the part of defendants, of no knowledge on the part of the plaintiff and no equal means of knowing, and that defendant Lotts was not a fellow-servant, and other necessary averments are contained in all the counts. Defendants filed the general issue to the declaration.

The plaintiff was a structural steel and iron worker, thirty-nine years old. Defendant, George W. Jackson, Incorporated, was doing some work under and upon the elevated railroad at Franklin and Van Buren streets, Chicago, Illinois. The elevated structure was overhead and there were street cars running in Van Buren street at the time. There was a continuous roar from the elevated trains and an almost continuous stream of teams passing back and forth in Franklin street. Working with the plaintiff, all under the direction of defendant Lotts, were Lembach, Kramer, Greichen (spoken of in the record as "Greshen") and Kennedy. Lotts told the men to go to the southwest corner of Van Buren and Franklin streets, where the beam in question was lying, and move it to the southeast corner of the same streets.

It was an I-beam, thirty-four feet long, two feet deep and had two flanges 7″ wide. The web between the flanges was .5⁄8″ thick and the beam weighed 3,400 pounds.

Two dollies were used in moving the I-beam. over the street. Each "dolly" consisted of a square wooden frame of square strips of wood four inches by four inches, two feet long; on top of this frame or base, which was thirty-four inches across its outside dimension and sixteen inches across its inside dimension, was placed a cast-iron roller about fifteen inches long, six inches in diameter, and fastened to the wooden frame by means of a rod run through the roller. The top of the roller, when used as a "standing" dolly, was ten inches from the ground and the beam placed on the roller, was one of the seven-inch flanges for its bearing surface, was thirty-four inches at its top flange from the ground. If the beam were exactly in the center of the dolly roller there would be about five inches on either side between the edge of the flange and the edge of the roller.

These dollies were denominated either "running" dollies or "standing" dollies, according to the manner in which they were used. If the roller was placed on the ground with the frame up, the dolly traveled with the load placed on it like a caster under a table being moved, and was called a "running" dolly. If the dolly was placed frame on ground, with roller up and the load was pushed or rolled across it, the frame remained still and did not move at all, and when thus used was called a "standing" dolly.

The surface of the intersection of the streets was paved with granite blocks and was uneven and very rough, and the dollies were used as "standing" dollies because the pavement was too rough to run the dollies over it.

When Lotts gave the order above mentioned, the five men bore down on one end of the beam, which was

on a loading block, and put a standing dolly under the beam. After it was pushed ahead north, another standing dolly was put under the beam. In order to point the beam towards the southeast corner of the intersection, the beam was pushed forward until it rested at its center on one dolly and the other dolly was moved forward and placed towards the southeast, and the beam was steadied and straightened as it went forward by a crowbar placed with its point inside the square dolly frame perpendicularly against the beam. No prying was used in this operation. The beam was got to the southeast corner so that it lay northwest and southeast. At the southeast corner stood two piles of cribbing about ten feet apart, with a steel column supporting the elevated road between them. This cribbing consisting of short timbers, one pair superimposed crosswise at the ends upon another pair, and so on, up to the top, forming temporary piers to support weight. The west pile of cribbing was in Van Buren street, right at the curb corner, and the other about ten feet east thereof in the same street. The beam was to go between the west cribbing and the steel column. The beam having been pushed north-easterly as far as was desired was then pivoted on a dolly, and was then swung around so that the end that had been pointing southwesterly was pointed south-easterly. This movement swung the beam probably a quarter of the way around. The beam was then moved southeasterly by taking out the rear dolly and putting it under the forward end of the beam as the movement progressed. The progress of the beam was blocked by the west cribbing. Defendant Lotts was personally supervising this work, and saw where the beam was headed, and that the south end must go further to the east in order to go between the west cribbing and the steel column. At this state of affairs, the beam rested on the two dollies. One was about five feet from the south end of the beam and the other

north of the middle.   Kennedy was on the east side of the beam at the south end.   Greichen was standing at the north end at the east side.   Lembach stood at the north, or center, dolly on the west side of the beam with a crowbar in his hand.   Lotts stood about two feet from Lembach on the west side of the beam between Lembach and the north end of the beam and obstructed plaintiff's view.   Kramer was north of Lotts on the west side of the beam.   Plaintiff was standing at the north end of the beam west of Greichen. Lotts told Lembach to pry the dolly and beam over to the east.   Lembach attempted to insert his bar under the dolly frame and it did not take hold.   He tried again and secured a hold; the dolly moved about an inch and a half, and the square edge of the dolly frame caught against a granite block.   At this time the east side of the bottom flange of the beam was about two inches from the east edge of the dolly roller, the beam being east of the center of the dolly four or five inches. The west side of the dolly had been slightly raised by this movement, and the momentum and sudden stopping of the dolly by the unevenness of the pavement caused the beam to slip off the east side of the middle dolly, and, as its south end was bearing on a dolly roller, it ran back fifteen to eighteen inches north and the north end of the beam fell upon and crushed Mc-Farland's foot into the groove of the street car rail. Neither Greichen nor McFarland heard Lotts give the order to Lembach; neither saw clearly what Lembach was doing.   There was the roar of city traffic in the air, including the noise of the elevated railroad.

JOHN A. BLOOMINGSTON, for appellants; FOREMAN, LEVIN & ROBERTSON, of counsel.

AARON R. EPPSTEIN, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

## Abstract of the Decision.

1. JUDGMENT, § 247*—*when the record may be corrected to show the granting of a new trial.* Where at a prior trial the jury returned a verdict against one defendant and was silent as to a codefendant, and the trial judge granted the first defendant's motion for a new trial and the plaintiff's motion for a new trial as to the codefendant, and the minute clerk afterwards drew his pen through the entry in the law record as to the ruling on plaintiff's motion for a new trial as to the codefendant, at the request of the clerk of the attorney for the defendants without any authority of any kind and without any order of court, the court had full power to correct the record after the term and to make it speak the truth *nunc pro tunc,* as the cause had never been disposed of by final judgment as to either defendant and was still pending before the court, and the court did not err in refusing to dismiss the cause as to such codefendant.

2. MASTER AND SERVANT, § 173*—*when a master adopts an unsafe method of work.* Where a first count alleged the negligent adoption of an unsafe method by defendants to move sidewise both a dolly and a beam by prying it over with a lever or crowbar, and a second count alleged a negligent order given by a foreman codefendant, and a third count alleged that defendants failed to warn plaintiff of the fact of the sidewise movement and of the danger, the evidence is *held* to support a finding by the jury that the method adopted was unsafe and negligent, the testimony of the rough condition of the street being admissible under the averments of the different counts.

3. MASTER AND SERVANT, § 627*—*when opinion evidence as to safety of a method adopdted is incompetent.* Direct evidence of the opinion of witnesses suggested by defendants as necessary to whether a method adopted to move sidewise a dolly and a beam over a rough street, by prying it over with a lever or crowbar, was incompetent as being a clear invasion of the province of the jury.

4. MASTER AND SERVANT, § 178*—*when master negligent in adopting unsafe method of work.* Where a codefendant foreman selected a method of moving a dolly and a beam over a rough street and he knew all the conditions existing and the danger attendant upon such a method and the positions of the men including the plaintiff, the jury were warranted in finding that the method adopted was dangerous and negligent, that the order given by the codefendant was negligently given, that the codefendant represented the other defendant, a corporation, and that plaintiff did not hear or know of the order and was not warned by the codefendant foreman.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

McFarland v. George W. Jackson, Inc., et al., 189 Ill. App. 453.

5. MASTER AND SERVANT, § 375*—*rule as to assumption of risk.* For the application of the principle of assumption of risk, the employee must have knowledge of the danger to which he is subjected.

6. MASTER AND SERVANT, § 304*—*risks not assumed.* The servant does not assume risks arising from the master's negligence.

7. NEGLIGENCE, § 74*—*when one is not bound to anticipate negligence in another.* The law does not impose a duty upon one to anticipate negligence in others, and the presumption of law is that every person will perform the duty enjoined by law or imposed by contract.

8. MASTER AND SERVANT, § 739*—*when assumption of risk is question for the jury.* The question of assumption of risk by an employee is one of fact for the jury, whose finding will not be disturbed, where the evidence does not call for a different conclusion.

9. MASTER AND SERVANT, § 777*—*when instruction on proximate cause not misleading.* An instruction to the effect that where the master is guilty of negligence, proximately causing an injury to a servant and without which the injury would not have occurred, it is immaterial, so far as the servant's right to recover is concerned, if the negligence of a fellow-servant, if any, combined with the negligence of the master, if any, to produce or proximately contribute to the servant's injury, *held* not erroneous as an abstract proposition, since there was but one injury and the jury could not have been misled.

10. PLEADING, § 28*—*necessity of pleading evidentiary facts.* Evidentiary facts need not be pleaded in order to be admissible in evidence.

11. MASTER AND SERVANT, § 376*—*admissibility of evidence.* Held proper to show that no other beams had been moved sidewise by prying over the dolly and beam prior to the accident, as bearing upon an employee's lack of notice of the negligent method of the work and indicating that he did not assume the risk arising from the method adopted.

12. TRIAL, § 223*—*when the presence of a party's family is not erroneous.* In an action for personal injuries, the presence at the trial of plaintiff's wife and son, who were excluded when objection was made, *held* not to have affected the result of the trial such as to require a reversal.

13. DAMAGES, § 241*—*when a verdict will not be disturbed as excessive.* In the absence of a showing of passion or prejudice, a verdict for four thousand dollars *held* not excessive in an action for personal injuries, since there is no hard and fast rule by which such damages can be measured.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.